The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. I'll now call up the first case for argument this morning, 19-2121, Lippert Components v. MOR-ryde International. Mr. Fountain, are you ready to proceed? Yes, Your Honor. Good morning. This is Ryan Fountain. There are four fundamental rules we need to keep in mind today. First, pleadings are not final briefs. Second, whether or not to exercise discretion is a question of law. And in that regard, it is an abuse of discretion to refuse to exercise discretion when it's called for. And finally, it's an abuse of discretion to sanction actions that are legally permitted. Now today, we cannot undo the damage that has been done to the appellant, especially after four years of delay. But we can mitigate its ongoing adverse effects. Specifically, the scarlet letter of sanction that follows an attorney for the rest of his life. Which sanction are you talking about here, Mr. Fountain? I gather you say that there are two sanctions here. One is the monetary sanction under 1927 based on the filing of the amended complaint. And then the other is what you describe as a sanction of excluding from the record or striking from the record certain documents. Well, there are actually three aspects to the sanctions. First, having to do with the amended complaint where there was both a monetary sanction and an express finding of objective unreasonableness. Secondly, with regard to the implementation of the magistrate's order, the sanction had two parts. First, to preclude additional filings, which may be moot. And secondly, to deny access to important judicial records. To strike those records from the public access. Go ahead, please. I just wanted you to specify what records those are that you think have important public issues. Docket entry 108, docket entry 109, docket entry 114, and 115. Docket entry 108 and 109 were the reasons why the magistrate expressly amended his order. And in fact, docket entry 109 was cited by the magistrate in his amending order. But the reason those are important as a part of the scarlet issue, scarlet letter issue, can be quantified not just in the attorney's reputation in the profession. But also, for example, as to prohibition motions. As you're no doubt aware, many attorneys, myself included, litigate cases outside their home districts. Usually by means of prohibition motions. And on many of the forms used by district courts, the question is asked, have you ever been sanctioned? Mr. Compton, this is Judge Arreno. I'd like for you to get to the heart of your case. What exactly is it that you're appealing? Forget about this lesson that you're giving us in different aspects of law. What's your skin in this game? The skin in the game is twofold. I'm out a lot of money, and that goes on from the interest rates. And secondly, I've got two official sanctions on the record that I have to carry with me from now on, not just reputationally, but every time I try to go into a different court, I have to explain those. And if I don't have access, first off, if the sanctions stand, I'd like to get the sanction removed in the first place. But if the sanction stands, I need access to the records to be able to prove the sanction was unjust. Because otherwise, when I have these Pro Hoc Vici motions reviewed, courts are typically going to impose restrictions and conditions that significantly increase the cost. I understand that part. And you want us to reverse on the sanctions? Yes. And I want my money back and interest. Okay. And we have a standard to review. Present your argument as to why reversal would be proper under a standard of review. The standard of review is in two parts. We have some questions of law that you review de novo and a question of fact that you review for the clearly erroneous standard. On the question of law, was the pleading, the amended complaint, plausible factually and legally? Now, Lippert has not argued that the alleged facts are not plausible before this court. And the district court did not find the facts not plausible. But, Mr. Cohn, why really is that the question? I mean, why wasn't the district court well within its discretion to say, you presented this very assertion by way of a defense. The district court rejected it in full on the merits. And it was nothing but a waste in this case to refile the same assertion by way of a counterclaim. Because it wasn't the same assertion. The district court rejected it the first time around and said, there are some problems here. You didn't address the following issues. We're dismissing without prejudice. We turned around within the time frame previously allotted by the court, corrected those problems. What are the problems you're speaking to abstractly? What was it that you asserted in the amended complaint counterclaim that might even plausibly have removed the counterclaim from the force of the earlier dismissal of the defense? Well, two things. We addressed the due process requirements. And we addressed the I4I case more specifically. We pointed out that Justice Breyer's concurring opinion was entirely plausible. And, indeed, other courts after us have adopted that approach as well. And we also changed the remedy we were seeking. We weren't just asking for unconstitutionality. We had that as one of three options for what we were trying to do. And the fundamental flaw in what the district court's analysis was is the district court said, yes, the obviousness examination is a factual determination. Sure it is. But not doing that at all is a question of law. And that's where Justice Breyer's argument picks up. When you have a flaw as a question of law, you're not bound by the clear and convincing standard of 282. And other courts have picked that up subsequently. Let me interrupt. This is Sharon Post. You just mentioned that you changed the remedy. Can you be a little more specific? You changed the remedy you were seeking. One, that makes it significantly different. And, two, how did you change the remedy? We offered three alternative remedies for this. First, that as applied, 282 was unconstitutional. Secondly, 282 doesn't… That was what you had the first time when it was a question of defense. That's right. So that wasn't a new remedy. Right. And secondly, we said 282 doesn't apply as per Justice Breyer's opinion because this is a question of law. And third, even if it does apply… So that's a different remedy? So that's a different remedy than you were seeking in the affirmative defense? Well, the first time around, we said it should be held unconstitutional. The second time around, we're saying it doesn't apply here. It's a non-issue. And the third thing we said is, even if it applies and even if it is an issue, we have met the clear and convincing standard because of this other evidence in both file histories. So that's a different remedy all around. And we were upfront about this all the way through that this was new issues of law, but it turns out that it wasn't so new because other cases had picked this up after us. The Communicate Laboratory case and the technology development case both decided on this analysis with regard to Section 101. Communicate Laboratories is cited at 151 Fed Sub 3rd, 778, the discussion beginning on page 787. And technology development is cited at 258 Fed Sub 3rd, 884, the discussion picking up on page 887 through 888. So these were plausible legal theories as demonstrated by other courts. But the fundamental flaw that the district court in our case made was not realizing that the failure to exercise discretion itself is a question of law. Moving on, and I see I'm running out of a little bit of time here. One of the reasons I asked for oral argument today is to resolve some of the allegations that have come up on appeal before this court. Let's not have two ships pass in the night leaving guesswork for this court. We can get explanations and meanings, particularly with regard to the allegations Morey has made on page 18 of its brief regarding the questions of privilege, which we contend there were none, concessions of privilege. I'm not understanding this line of advocacy, Mr. Fountain. Oral argument is 15 minutes on the side. There were arguments raised in red, and your gray brief is the opportunity to respond to those arguments. Oral argument isn't the time, I think you would agree, for these new arguments and new matters contained in the briefing. So are you now raising matters or making arguments that were not contained in your gray brief? And if so, do you think that's appropriate? No, ma'am, I'm not. I'm urging opposing counsel to address the items I raised in my gray brief, and I'll reserve response to that on rebuttal. So if there's no other questions I can answer for the court at this time, I would reserve the rest of my time for rebuttal. Colleagues, have any other questions for Mr. Fountain at this time? Not now, thank you. No. Okay. All right. Let's hear from the other side. Is my understanding correct that you are dividing argument? That is correct, Your Honor. All right. So tell us who you are and how much time you have and what you're going to cover. Your Honor, this is Jonathan Frummel representing Appley Lippert Components. I have reserved seven minutes of time to address the issues specifically related to the sanctions related to the amended complaint. Okay. Proceed. May it please the court. In this case, the district court did not abuse its discretion by either sanctioning Mr. Fountain for filing a counterclaim in violation of the district court's order or in determining the appropriate amount of those sanctions. With respect to the first issue, there is a threshold issue. Mr. Fountain was clearly required to seek leave of court to amend his pleadings. The district court, you can find this at appendix page eight, expressly stated, if Mooride wishes to amend its pleadings, it must seek leave of court to amend consistent with rule 15. This was an express statement that leave was required, and Mr. Fountain did not seek that leave. His hindsight argument at page three and four of his reply brief, that that was nothing more than a reminder to Mooride that since the October 28th deadline was approaching, that deadline must be observed or else the other provisions of rule 15 would apply, does not make sense, and from my perspective, itself seems objectively reasonable. What do you say to Mr. Fountain's argument that in his counterclaim, he raised different requests for relief than he had originally? And the last point I think he made was, I guess, I don't remember. If it's an affirmative defense, he didn't say, even if the clear and convincing evidence standard applies, we still win because, and he made that the first time in his counterclaim. One, is that accurate? And two, if it is accurate, why doesn't it make a difference? Your Honor, I believe that Mr. Fountain may be correct in that the focus of his affirmative defense, which was a relatively bare-bones pleading, was just that the clear and convincing standard does not apply and violates due process. I would say, to answer your question in two parts, first of all, the relief thought was basically the same. I don't believe that there is any difference in saying that the clear and convincing standard doesn't apply, or we may have met the clear and convincing standard. It was still the same basic theory that the clear and convincing standard violated due process and violated more rights due process. So I think that if there is a distinction, it's a distinction without a difference. I'm sorry, I don't remember that Justice Breyer's concurrence in I4I, which was a concurrence and not a dissent, made any point about due process. I thought he said only that to talk about a burden of persuasion is necessarily to talk about only facts, and there is no such thing as clear and convincing evidence on a legal question. What does that have to do with due process? Your Honor, I would agree with you there. I don't necessarily see the connection with due process. I was just phrasing that in the context of Mr. Fountain and Mooride's pleadings that had focused this issue on the issue of whether Mooride's due process had been violated as a result of the clear and convincing standard. So I would agree with you, Your Honor, that, again, Justice Breyer's decision was merely a concurring decision, and it also does not expressly address the issue of due process in any way. Did the district court in granting the 1927 sanctions rely independently on the failure to seek leave to file the amended pleading, or how does that basis relate to your just being repetitious basis? Your Honor, the district court relied on both. It primarily and initially relied on… What page should I look at in the appendix? Your Honor, I believe it would be… give me one moment. I believe it would be on pages four and five of the appendix, but I'm calling that up right now. I thought it was on eight, but I may be wrong. I'm getting there right now. So, Your Honor, page eight specifically references and initially… You're right, Your Honor, and thank you for the clarification. Page eight, initially, the court decides that counsel's decision to reassert the same theory was objectively reasonable, and then the court, as a secondary level of review, indicated that even if the court had not dismissed the counterclaim, it would have stricken it because Morey did not seek leave. So I think the primary issue is the repetitive pleading issue. The secondary issue is that Rule 15, leave, was not sought. I'm sorry. I'm not as perceptive with my eyes. Where particularly on page eight is the leave point? It's very near the bottom of page eight. Oh, in the sense that that is particularly true, given? Yeah, and then there's also… Right, and then indeed… I think in the next sentence, the indeed sentence. Okay, thank you. Correct, correct. Can I ask you this? There is a brief discussion in the blue brief of the difficulties or of the objections that Mr. Fountain made to certain amounts of the sanction, about 5,000 or something, representing about 31 percent, and two questions. Is there anything in your red brief that responds to that? And second, what did the district court say about that amount of sanction set of objections? Your Honor, in our red brief, we did not go into significant detail other than to point to the fact that we had presented the invoices, we had presented the hourly rates, we had presented that all to the district court, and then going to your second question, Your Honor, the district court specifically indicated that it had reviewed all of those invoices, it had reviewed the issues raised by Mr. Fountain, it had in fact made a determination that the amounts were appropriate and proper, and in fact, I believe it's at page 23 of the appendix, and I'll confirm that, the district court had weighed the evidence and had determined that in its decision, that if anything, the amounts were conservative and not overstated. Okay. I think I heard the bell go off, sir, so did you? I think it's time for your colleague. Thank you, Your Honor. If there's no further questions, I'll turn it over to Mr. Salpil. May it please the court, this is Joseph Salpil, and I will be arguing on behalf of the Mori defendant, and I will be addressing the second issue that was raised in Mr. Fountain's brief that related to the order striking certain of this filing. This is Judge Toronto. Can I ask you this question? If we agree with you on this issue that the appeal of this particular striking order is not a proper appeal and dismiss it and say that that was not a sanction, would it then be clear that the attorney would not have to include that striking order in reporting, in answering a question on PROHUCVJ or other forms? Have you been sanctioned? Yes, I would agree with that. Okay. As we're asking, is that this court dismiss the second issue for lack of jurisdiction or in the alternative affirm the district court's order striking certain of this filing? As we've outlined, you know, the Constitution requires that there be a case or controversy to proceed an appeal and for this court to have jurisdiction. The parties have settled the case, so there's no case or controversy. We do recognize that this court has found a limited exception to this rule that requires, that allows for an attorney who has been sanctioned to appeal. But those cases make very clear that critical language, negative commentary, reputational harm or determinations of lack of credibility,  We believe that the order that struck Mr. Fountain's filings were very clear. Mr. Fountain wasn't being sanctioned in that order. He wasn't fined. He wasn't reprimanded. He wasn't punished. In fact, what the order held is we're not sanctioning Mr. Fountain. We're applying those sanctions to Mori. And so it was clearly not a sanction. Any alleged reputational harm that exists because of it is not enough to confer jurisdiction. Now, in his reply, Mr. Fountain identifies two other possible basis for jurisdiction. One, he mentions the public access doctrine, but that really does not confer jurisdiction on this court. That really goes to the merits of his argument, not to whether there's jurisdiction. And in the second, he mentions that at the end of the order, he was required to seek leave before filing any other documents. He calls this an injunction. It's not an injunction. Courts routinely ask participants to seek leave. It's a common requirement. But regardless of all this, Mr. Fountain has conceded in his brief that because the case is settled, that issue is moved. And since it's moved, it cannot confer jurisdiction to this court. Can I just clarify something? Was the directive to seek leave before filing anything, that is, the directive to Mr. Fountain, limited to this case, or did it run to his filing anything in other cases? I believe it was just limited to this particular case. Okay, so let's move further. I'm sorry. And then I was just going to address the merits. If the court gets to the merits of the motion to strike, we believe that the court did not abuse its discretion in striking those documents. The court found that Mr. Fountain had no reason to be filing those documents. As I already explained, the court didn't sanction Mr. Fountain, and more, it wasn't asking the court to sanction Mr. Fountain. And since he wasn't in any danger of being sanctioned and the court recognized this in its filing, it was reasonable for the court to strike those documents. And again, just because Mr. Fountain doesn't like what was being said doesn't give him the right to start filing documents in a case. To address the public access doctrine which Mr. Fountain raises, one, he acknowledges that courts routinely file documents under seal and strike documents. That's not a prohibited action. To stop a court from doing that, to allow anyone to file anything at any time, would just lead to chaos and not allow a court to manage its own docket. Mr. Fountain cites the Continental case, and I just want to address that briefly. The Continental case is distinguished on its facts. That dealt with a case where a report was originally filed under seal, but the party who then filed it under seal introduced that report at a public hearing where the contents of the report became public and then was used at that hearing and then used in the subsequent court ruling. And then a newspaper later on wanted access to the underlying report. This is a different situation here where Mr. Fountain was filing confidential and privileged documents. He didn't have the authority to be filing and making public, and the court didn't rely on any of Mr. Fountain's documents in its order. And so on that basis, the Continental case is easily distinguished. So for all these reasons, we believe the court should dismiss the appeal on the second issue for lack of jurisdiction, but to the extent it gets to the merits, we ask that it affirm the district court order striking the documents because that was not an abuse of its discretion. Thank you. Thank you. Okay, we're on to your remaining rebuttal time, Mr. Fountain. Thank you, Your Honor. The question was raised a few minutes ago is what does Justice Breyer's concurring opinion have to do with due process? And the answer is quite simple. Due process requires a neutral tribunal. If we're looking at heightened burdens of proof and heightened standards, the tribunal is not neutral anymore. So as to questions of fact, that may be okay, but to apply a heightened standard to questions of law, that's impermissibly not neutral. Secondly, a moment ago, I heard Moride say that one of the grounds for asking reversal is that Moride did not ask the court to impose sanctions on Mr. Fountain. In my gray brief, I questioned how in the world that statement can be made because over and over again in the record they did, I still don't understand how they can make that statement. I was hoping for an explanation now, but I don't see it. Did you include a record site in gray brief as to where they did ask for sanctions? Yes, ma'am, many locations. It's all there laid out in detail, but somehow we seem to be two ships passing in the night, and I'd hate to see that happen, but I guess it did. Moving on, Your Honors, do you have any other questions I can help you with? No. Why don't you just proceed? If you want to give back your time, that's fine as well. It's up to you. I think the briefs and the discussion today pretty much deal with everything else. I appreciate your courtesy, and thank you for your time. We thank all sides, and the case is submitted. Thank you.